UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN ALBERT SNELL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security<br><br>　　　　Defendant. | No. 2:18-cv-2719-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 9 & 14. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I.　Background

Plaintiff filed an application for a period of disability and DIB, alleging that he had been disabled since December 31, 2013. Administrative Record ("AR") 212-20. His application was denied initially and upon reconsideration. *Id.* at 118-23, 125-30. A hearing was subsequently held before administrative law judge ("ALJ") Sheila Walters. *Id.* at 42-84. Plaintiff was represented by counsel and testified. *Id*.

1

On March 14, 2017, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id*. at 17-30. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2018.

2. The claimant has not engaged in substantial gainful activity since December 31, 2013, the alleged onset date (20 CFR 404.1571 *et seq*.).

\* \* \*

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

3. The claimant has the following severe impairments: Degenerative disc disease of the cervical spine, status-post cervical surgery in 2003 and 2010, obesity, depression, and anxiety (20 CFR 404.1520(c)).

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

* * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). He is able to lift and carry ten pounds frequently and twenty pounds occasionally. The claimant is able to sit for about six hours of an eight-hour workday. He is able to stand and/or walk for about six hours of an eight-hour workday. The claimant is unable to climb ladders, ropes, and scaffolds. He is able to occasionally climb ramps and stairs. The claimant is able to occasionally stoop, kneel, crouch, and crawl. He is able to occasionally reach overhead. The claimant is able to frequently perform fine and gross manipulation. He is limited to occasional exposure to odors fumes gases [sic] and other airborne pulmonary irritants. The claimant is able to perform simple, repetitive tasks. He is limited to no more than occasional interaction with supervisors, coworkers, and the public.

* * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

* * *

7. The claimant was born [in] 1962 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

* * *

3

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2013, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 19-30.

Plaintiff's request for Appeals Council review was denied on September 13, 2018, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-7.

II. <u>Legal Standards</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. <u>Analysis</u>

Plaintiff contends that the ALJ committed two errors in finding that he was not disabled. First, he argues that the ALJ erred in rejecting opinions addressing his mental functioning from treating and examining sources in favor of opinions from non-examining physicians. Second, he argues the ALJ improperly failed to order a consultative examination to evaluate his physical

limitations. ECF No. 9-1 at 14-24. For the reasons provided below, the court agrees with plaintiff's first argument and remands the case on this basis. Accordingly, it declines to address plaintiff's remaining argument.

A. Background

In December 2016, plaintiff's treating physician, Dr. Corey Brink, completed a medical source statement. AR 475-477. Dr. Brink diagnosed plaintiff with major depression disorder, with symptoms of depressed mood, anhedonia, low energy, insomnia, anxiety and avoidance of responsibilities. *Id.* at 473. It was his opinion that plaintiff had a good ability to relate to co-workers and interact with supervisors; a good to fair ability to understand, remember, and carry out simple job instructions; and a fair ability to deal with the public. *Id.* at 476-77. Dr. Brink also opined that plaintiff had a fair to poor ability to function independently and poor to no ability to deal with work stressors, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. *Id.* He also concluded that plaintiff's impairments would cause him to be absent more than three times a month. *Id.* at 477.

Plaintiff also underwent a comprehensive psychiatric evaluation, which was completed by examining psychologist Dr. M. Giannuli, Ph.D. *Id.* at 369-75. Based on that evaluation, Dr. Giannuli opined that plaintiff could perform simple and repetitive tasks but was moderately impaired in his ability to perform detailed and complex tasks, interact with coworkers and the public, and perform work activities on a consistent basis. *Id.* at 374. Dr. Giannuli also concluded that plaintiff had marked impairments in maintaining regular attendance, completing a normal workday and work week without interruptions from a psychiatric condition, and dealing with the usual stress encountered in the workplace. *Id.* at 374-75.

The record also contains opinions from two non-examining physicians, Dr. B. Smith and Dr. H. Amado. *Id.* at 95-96, 110-11. Based on their review of plaintiff's medical records, both physicians concluded that plaintiff could perform tasks involving short instructions without the need for additional support, and he could maintain attention in two-hour increments. *Id.*

/////

In assessing plaintiff's residual functional capacity, the ALJ adopted the opinions provided by Dr. Smith and Dr. Amado and rejected significant portions of Dr. Brick (treating) and Dr. Giannuli's (examining consultative) opinions. AR 27-28.

B. <u>Relevant Legal Standards</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id*. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

C. <u>Discussion</u>

In her decision, the ALJ provided several reasons for according minimal weight to Dr. Brink's opinion, none of which were legally sufficient.

The ALJ first noted that Dr. Brink began treating plaintiff in October 2016—just two months prior to rendering his opinion—and stated that the record contained scant evidence of mental health treatment prior to October 2016. AR 28. The length of the treating relationship is an appropriate consideration in evaluating the weight a treating opinion should be accorded. *See* 20 C.F.R. § 404.1527(c)(2)(i). But a limited treating relationship alone cannot support an ALJ's rejection of a treating opinion. *See, e.g., Durham v. Colvin*, Case No. CV 15-00567-RAO, 2015 WL 9305627, at *5 (C.D. Cal. Dec. 21, 2015) (while "the regulations permit an ALJ to consider the length and frequency of the treatment relationship," this is only "one . . . factor" and "is not alone a specific and legitimate reason to give [a treating physician's] opinions less weight."). As

discussed further below, none of the ALJ's other reasons justify rejecting Dr. Brink's treating opinion.

Plaintiff's failure to seek mental health treatment earlier does not justify rejecting Dr. Brink's opinion. As the U.S. Court of Appeals for the Ninth Circuit has explained, because "mental illness is notoriously underreported and . . . 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter v. Comm's Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

The ALJ also gave reduced weight to Dr. Brink's opinion because it appeared that the physician relied heavily on plaintiff's subjective complaints rather than clinical observations or findings. AR 28. Generally, the opinion of a treating physician may be rejected where it is premised primarily on plaintiff's subjective complaints and the ALJ properly discounted plaintiff's credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). But this rule does not apply in the same manner to opinions assessing mental limitations. As the Ninth Circuit has explained:

> Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry . . . . Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

While Dr. Brink certainly relied, at least to some degree, on plaintiff's subjective statements, it does not appear that his opinion was exclusively based on plaintiff's self-reports. Indeed, Dr. Brink noted that plaintiff had depressed mood, low energy, and was very anxious. AR 476.

The ALJ also concluded that Dr. Brink's opinion was inconsistent with treatment notes reflecting that plaintiff's symptoms were generally controlled with medication and symptoms. AR at 28; *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments effectively controlled by medication are not disabling for purposes of disability

7

benefits). The record, however, does not support the ALJ's finding. Although plaintiff reported in mid-October 2016 that he thought his medication was helping (*id*. at 463), it was noted at the following appointment that plaintiff had "had a difficult week" and experienced extreme anxiety (*id*. at 464). In late October and early November, plaintiff reported that he was generally doing well, although he continued to report having difficult days. *Id*. at 465-66. He also reported improvement in his mood and that he was able to manage his frustration better. *Id*. at 388. In mid-November, plaintiff did not report any significant symptoms and noted that he was able to manage his anxiety and depression "relatively well." *Id*. at 467-68. But in late November and early December 2016, it was noted that plaintiff had significant increases in his symptoms of depression and anxiety and was experiencing "intrusive suicidal thoughts." *Id*. at 388, 469.

Contrary to the ALJ's conclusion, these records do not support the finding that plaintiff's symptoms were generally controlled with medication and therapy. Instead, they reflect short periods of improvement, which does not provide a basis for rejecting Dr. Brink's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *see also Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) ("The ALJ's conclusion that Rodriguez was responding to treatment also does not provide a clear and convincing reason for disregarding Dr. Pettinger's opinion. No physician opined that any improvement would allow Rodriguez to return to work").

Lastly, the ALJ stated that "it is significant that [Dr. Brink] does not mention what effect the claimant's almost daily use of alcohol and recreational drugs may have on his mental functioning." AR 28. But the ALJ does not explain why it was significant that Dr. Brink did not provide explicit findings regarding the impact of plaintiff's substance use. The ALJ's failure to do so is troubling given that: (1) Dr. Brink was aware that plaintiff used marijuana almost daily and consumed one to two alcoholic drinks several nights a week (*id*. at 388); (2) neither Dr. Brink nor any other physician concluded that plaintiff's substance use impacted his ability to work or exacerbated his mental impairments; and (3) the ALJ did not specifically conclude that plaintiff's

8

substance use impacted his ability to work. Accordingly, Dr. Brink's failure to specifically explain how substance use impacted plaintiff's functional limitations is not a specific and legitimate reason for discounting his opinion.

The ALJ's rejection of Dr. Giannuli's opinion that plaintiff had marked limitations is equally deficient. The ALJ proffered four reasons for giving reduced weight to Dr. Giannuli's opinion. First, the ALJ found that the opinion was inconsistent with plaintiff's fairly wide range of daily activities. AR at 28. But the activities reported by plaintiff, and summarized in the ALJ's decision, were quite limited. As noted by the ALJ, plaintiff reported the ability to attend to his hygiene, prepare simple meals and do household chores, shop, drive, and go out with friends. *Id*. The ability to perform these limited activities is not inconsistent with Dr. Giannuli's opinion as to plaintiff's marked limitations. *Id*. at 374-75. As one appeals court has persuasively observed:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); *cf. Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."). The assertion by the ALJ that these listed activities are inconsistent with Dr. Giannuli's opinion that the plaintiff has marked limitations in maintaining regular attendance, completing a normal workday and work week without interruptions from a psychiatric condition, and dealing with the usual stress encountered in the workplace is unsupported by the record.

/////

9

In the same vein, the ALJ improperly rejected Dr. Giannuli's opinion based on evidence plaintiff attempted to look for work and start a business 2015 and helped his spouse with her business in late 2016. AR 28. Plaintiff testified that he wanted to work and had tried to start his own business selling wine. *Id*. at 56. His efforts to start his business were limited to applying for a business license and alcohol license and printing business cards. *Id*. Plaintiff also attempted "to do some surveys one day," but he was unable to make it through the day due to pain. *Id*. Consequently, he abandoned his endeavor to start his business. Plaintiff's ability to perform these limited activities are not inconsistent with Dr. Giannuli's opinion that plaintiff was significantly impaired in maintaining attendance, completing a normal workday, and dealing with stress.

Nor does the limited evidence regarding plaintiff's involvement in his spouse's business support the ALJ's rejection of Dr. Giannuli's opinion. Treatment notes from late 2016 reflect that plaintiff was "helping wife with the ordering for her store" and was able to do "small things around the house and for wife's shop." *Id*. at 465-466. These treatment notes, however, were from periods of temporary improvement in plaintiff's mental health symptoms. *See generally id*. at 463-71. But more significantly, the record is devoid of details regarding the activities plaintiff performed for his spouse's business. Absent details regarding the frequency or mental demands of these activities, these tasks cannot serve as a basis for rejecting Dr. Giannuli's opinion. *See Trevizo* 871 F.3d at 676 (holding that ALJ erred in rejecting treating opinion based on claimant's childcare activities because "[t]he ALJ did not develop a record regarding the extent to which and the frequency with which Trevizo picked up the children, played with them, bathed them, ran after them . . . . The only childcare responsibilities identified at the hearing were one-off events, such as taking the children to the doctor or attending hearings (often by phone). Absent specific details about Trevizo's childcare responsibilities, those tasks cannot constitute 'substantial evidence' inconsistent with Dr. Galhotra's informed opinion . . . .").

The ALJ also concluded that the marked limitations assessed by Dr. Giannuli were not supported by the medical record. AR 28. But the ALJ does not explain how Dr. Giannuli's was contrary to the medical evidence of record. An ALJ may satisfy her burden of providing specific and legitimate reasons for rejecting a contradicted medical opinion "by setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.1988). As explained by the Ninth Circuit:

> To say that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity our prior cases have required even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretation and explain why he, rather than the doctors, are correct.

*Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999).

Here, the ALJ failed to cite, much less discuss, any evidence contradicting Dr. Giannuli's opinion that plaintiff has marked limitations. Instead, she offered only her conclusion that the opinion was unsupported by the medical evidence of record, which fails to satisfy the specific and legitimate standard.

The ALJ last reason—that Dr. Giannuli failed to give specific reasons or refer to clinical observations to support the marked limitations—is also unsupported by the record. The form completed by Dr. Giannuli provides an explanation for nearly all of the functional limitations assessed. For instance, Dr. Giannuli stated that plaintiff had marked limitations in maintaining regular attendance, completing a normal workday, and dealing with work-related stress due to his depressed mood and suicidal ideations. *Id*. at 374. Dr. Giannuli also explained that plaintiff's symptoms appeared "to be in the severe range due to his frequent suicide ideation." *Id*. Thus, contrary to the ALJ's contention, Dr. Giannuli provided an explanation for the limitations he assessed.

Accordingly, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Brink and Dr. Giannuli's opinions. The matter will therefore be remanded for further consideration. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

/////

IV. Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 9) is granted;

2. The Commissioner's cross-motion for summary judgment (ECF No. 14) is denied;

3. The matter is remanded for further administrative proceedings consistent with this order; and

4. The Clerk is directed to enter judgment in plaintiff's favor and close the case.

DATED: March 18, 2020.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE